UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA

vs.                       CRIMINAL NO. 3:22-CR-33 (OAW)

JOHN TRASACCO                  March 14, 2023

## JOHN TRASACCO SENTENCING MEMORANDUM

### PROCEDURAL BACKGROUND

On December 2, 2022, a jury returned a verdict of guilty against the defendant, John Trasacco, to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 (Count One), and one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 (Count Two). ECF No. 217.

### HISTORY AND CHARACTERISTICS

1. **Family Background**

John Trasacco came from a humble beginning. John came from a very close-knit family. He was born and raised in nuclear family environment. His mother gave birth to him in her late twenties. His parents met when his mother worked as a nurse, across the street from a mechanic shop, which was where his father worked. John was raised in West Haven, Connecticut, he considers himself a life long West Haven Native and is proud of his heritage. His mother still resides in West Haven, Connecticut. She worked in the public school system as a special education teacher's assistant. John loves his mother and refers to her as "good person" and a "great mom." He describes his deceased father, as a "good person" and a "good dad". Despite the family's financial struggles during his formative years, he lived in a stable home.

John is also an avid animal lover. John and his late dog Keno were inseparable. John traveled with Keno everywhere. The loss of Keno was devastating. He is still very attached to Keno and visits him daily in Branford where he was laid to rest.

John is dependable. His childhood friend referred to him as **"kind-hearted, genuine, and loyal individual"** EXHIBIT 1- Letter from Lisa. Over the years he has on multiple occasions supported his friends during difficult times.

2. **Educational History**

| | | |
|---|---|---|
| Washington Elementary School | Kindergarten – 4th grade | West Haven, CT |
| May V. Carrigan Intermediate School | 5th – 7th grade | West Haven, CT |
| West Haven High School | 9th – 12th grade | West Haven, CT |
| Department of Corrections | High School Diploma | |

John attended school in the West Have area. His education experience was affected by the reintegration period that occurred where the schools were moving students around, the change in environment and moving from the neighborhood school affected his education. He earned his high school diploma while at the Department of Correction and completed external courses from jail through Sacred Heart – studied religion and philosophy.

3. **John's Ventures Encompass his Personality, Creativity, Art, and Love**

John has always been an entrepreneur he has single handed started businesses. He ventured in the food industry at an early age. At the age of 18, he ran his first banquet hall (The Loft) in West Haven. John worked at several places including Pietro Micca Club where he was a manager for 5- 6 years (from 2010 to 2015/2016). He ran the business and assisted with hosting parties in the West Haven area. John has been involved in several creative ventures including Miracle Works Production in California; he opened the production studio around 2015. Even though it was a small

space where he mainly filmed his videos, it was an avenue to meditate, show case and practice his creativity. John has artistic talent and astute writing skills. Over the years he has written numerous brilliant screenplays. His goal is to continue and grow in this area.

In 2016, John started his he apparels business, ***I Love Love I Hate Hate*** (ILLIHH). This venture is an extension of his love for art, creativity, and the pursuit for a world of peace and love. The slogan printed on apparels and shoes are his way of spreading the message of love and coexisting to young people across the community and throughout society. EXHIBIT 2 photos. John is hopeful for the success of his apparel brand.

Over time John had other legitimate business venture like Kat Environmental. EXHIBIT 3 and Jill Sanitization Solutions, which is a subject to this case. Kat Environmental had a cleaning and waste management contract with the City of West Haven.

John enjoys integrating his passions into work. He enjoys art, painting, and screen writing.

## LEGAL ARGUMENT

In undersigned counsel's view, the best way to hold John accountable is to think expansively about the "kinds of sentences available," 18 U.S.C. § 3553(a)(3), and to make use of the Court's wide discretion to craft a sentence that will further the purposes of sentencing.

**A. The Court is required to impose the sentence that is minimally sufficient to accomplish the purposes of a criminal sentence.**

Pursuant to 18 U.S.C. § 3553, the Court is required to impose, in each case, a sentence that is "sufficient but not greater than necessary, to comply with the purposes set forth" in 18 U.S.C. § 3553(a)(2). Those purposes reflect the need for the sentence that is imposed:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and

3

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a)(2).

In determining what sentence will best achieve these purposes in each case, the sentencing court must consider the following factors:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The kinds of sentences available and the applicable sentence under the Sentencing Guidelines;
3. Pertinent policy statements issued by the Sentencing Commission;
4. The need to avoid unwarranted sentence disparities among similar defendants guilty of similar conduct; and
5. The need to provide restitution to any victims.

U.S.C. § 3553(a)(1), (a)(3)–(a)(7).

## B. The Court must not presume the Guidelines to be reasonable.

The advisory Guidelines range in this case is 33 to 41 months of imprisonment, based on a total offense level of 19 and Criminal History Category II. PSR ¶ 90. Total loss amount of $ 431,982.

While the Court is required to consider the range of penalties suggested by the Sentencing Guidelines in determining the appropriate sentence in each case, the Court is not bound by that range. *See United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, the Supreme Court has repeatedly reminded sentencing courts that "[t]he Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009); *see also Rita v. United States*, 551 U.S. 338, 351 (2007) (emphasizing that the only "presumption of reasonableness" that applies to a Guidelines sentence is "an appellate court presumption," not applicable in the initial sentencing analysis conducted by the District Court). Thus, while the Court must consider the recommendations of the advisory Guidelines, the Court may not presume that those

recommendations are reasonable. Instead, the Court must treat the recommended Guidelines range as only one among numerous factors in sentencing.

Sentencing courts are free to disagree with the Guidelines' recommended sentence in any case, and may impose a different sentence based on a contrary view of what is appropriate under § 3553(a). This includes the freedom to disagree with "policy decisions" of Congress or the Sentencing Commission that are contained in the Guidelines. *See Pepper v. United States*, 562 U.S. 476, 516 (2011) ("[O]ur post-*Booker* decisions make clear that a district court may in appropriate cases impose a non-Guidelines sentence based on a disagreement with the Commission's views . . . . That is particularly true where, as here, the Commission's views rest on wholly unconvincing policy rationales not reflected in the sentencing statutes Congress enacted."). This concept is especially relevant in cases involving the fraud guideline, as the fraud loss table is widely perceived to be "broken," the loss table is not based on empirical data, and the Sentencing Commission used a higher starting point than historical evidence dictated. *See United States v. Corsey*, 723 F.3d 366, 378-79 (2d Cir. 2013) (Underhill, J., concurring).

In determining an appropriate sentence, the sentencing court must apply the "parsimony clause" set forth in 18 U.S.C. § 3553(a), which provides that courts "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. The Second Circuit explained in *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006), that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. *See id*. at 142 (stating that where a Guidelines' sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence). ]

### C. The Court should depart or vary downward, based on the facts of the case Mr. Trasacco should be considered minimal or minor participant pursuant to U.S.S.G §3b1.2

Section 3B1.2 provides for "a range of [offense-level] adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2, cmt. (n. 3(A)). The guideline only applies when there was more than one criminally culpable participant in the offense. Id., cmt. (n. 2).

Mitigating Role is based on the defendant's role in the offense, decrease the offense level as follows:

> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
> In cases falling between (a) and (b), decrease by 3 levels.

In *Hurley*, court determined that defendant, who participated quite actively in several roles over significant period and was involved with substantial amount of laundered funds, was minor and not minimal participant in RICO conspiracy, even though defendant participated only few months and was held responsible for only $3.9 of $136 million conspiracy. *United States v. Hurley*, 63 F.3d 1, 1995 U.S. App. LEXIS 19318 (1st Cir. 1995), cert. denied, 517 U.S. 1105, 116 S. Ct. 1322, 134 L. Ed. 2d 474, 1996 U.S. LEXIS 1990 (1996).

Car salesman convicted of money laundering in connection with sting operation in which undercover police officer posed as drug dealer seeking to buy cars with cash proceeds of cocaine sales was properly sentenced as minor rather than minimal participant under § 3B1.2, where defendant participated in at least three transactions in various capacities. *United States v. Spriggs*, 102 F.3d 1245, 46 Fed. R. Evid. Serv. (CBC) 181, 1996 U.S. App. LEXIS 32932 (D.C. Cir. 1996), amended, 102

F.3d 1245, 322 U.S. App. D.C. 217, 1997 U.S. App. LEXIS 3149 (D.C. Cir. 1997), cert. denied, 522 U.S. 831, 118 S. Ct. 97, 139 L. Ed. 2d 52, 1997 U.S. LEXIS 4905 (1997).

In the present case Mr. Trasacco was one of four co-defendants charged in same indictment. John Bernardo has plead guilty to Count Five of the Indictment charging him with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349.Michael DiMassa plead guilty to Counts One, Three and Five of the Indictment, all charging violations of 18 U.S.C. § 1349. Lauren Knox plead to Count Three of the Indictment which charges Conspiracy to Commit Wire Fraud, contrary to 18 U.S.C. § 1343, and in violation of 18 U.S.C. § 1349.

Mr. Trasacco's charges are solely related to Michael DiMassa. It is unrefuted that John Bernardo and Michael DiMassa were both employees of West Haven, in positions of power. They had access to records, funds, documents, formed a shell company among other acts, during their involvement in their scheme. Michael DiMassa was also the mastermind behind the scheme with Lauren Knox where he siphoned money to Lauren Knox towards fictitious community programs.

Mr. Trasacco was the only one who had business ventures that were designed to provide merchandize and services. The evidence presented at trial showed that L & H was incorporated in the State of California in March 2019, long before the COVID-19 pandemic or the prospect of pandemic-related contracts or funding. L & H warehouse in Branford, was in existence prior to the dealings with City of West Haven and Michael DiMassa. "L & H apparel" and "clothing," including "jackets," were stored at warehouse. Unlike the other 3 co-defendants, Mr. Trasacco, on behalf of L & H, provided goods to Mr. DiMassa. It is unrefuted that Mr. Trasacco delivered good on more than one occasion to Mr. DiMassa. Given the relative culpability between the participants and the fact that Mr. Trasacco was the only one who made any effort to provide goods and services, Mr. Trasacco should be afforded a mitigating role adjustment.

7

Respectfully Submitted,

THE DEFENDANT,

John Trasacco

FEDERAL DEFENDER OFFICE

Date:   March 14, 2023              */s/ Lillian Odongo*
                                                    Assistant Federal Defender
                                                    265 Church Street, Suite 702
                                                    New Haven, CT 06510
                                                    Phone: (203) 498-4200
                                                    Bar No.: (# phv10994)
                                                    Email: lillian_odongo@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 14, 2023, a copy of the foregoing Motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                        */s/ Lillian A. Odongo*
                                        Lillian A. Odongo