UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:22cr33 (OAW) |
| | : | |
| v. | : | |
| | : | |
| JOHN TRASACCO | : | March 29, 2023 |

### GOVERNMENT'S SENTENCING REPLY MEMORANDUM

#### I.  Introduction

On March 21, 2023, the government submitted its initial sentencing memorandum (Doc. 275).  On March 24, 2023, the defendant replied. (Doc. 285). The government files this additional brief to address points raised in that memorandum.

#### II.  Discussion

**A. A Sentence Above The Guidelines Range Is Warranted Under 18 U.S.S.C. 3553(a)**

Simply put, a sentence above suggested Guideline range is warranted because the defendant participated in the conspiracy with DiMassa in way that is neither captured nor accounted for under the Sentencing Guidelines.  Trasacco learned of DiMassa's seemingly unfettered access to West Haven's COVID funds from Bernardo and – on his own – decided to exploit it for his own gain.  Unlike the schemes with Mrs. DiMassa and Bernardo, Trasacco initiated the frauds, provided all of the invoices, kept the crimes going by intimidating DiMassa, and kept virtually all of the proceeds for himself.  He was the driving force behind both the

1

L&H and JIL frauds.   This unique scenario is not quantitively captured by § 2B1.1 of the Guidelines.   These facts, coupled with the defendant's criminal history, prior incarceration and the heighten need for specific deterrence, indicate that a sentence above the range suggested in the Guidelines is warranted in this case for this defendant.

In his reply memo, the defendant argues his criminal category does not underrepresent the seriousness of his criminal past because his criminal history score is calculated correctly.   But this argument misses the point.   The parties appear to agree that the defendant is properly scored in CHC II under the Guidelines.   While a number of Trasacco's prior convictions do not count for his criminal history score under the Guidelines, pursuant to § 3553(a) the Court must consider the history and characteristics of the defendant.   Here, the defendant has led a life largely outside of the law.   He has multiple prior convictions.   He spent a significant time in prison. He was released from special parole on October 28, 2014 (see PSR ¶¶ 48, 49) and has now been convicted of yet another serious crime.   He has no visible means of support, "no current stable income" and apparently supports himself "with gifts from friends and occasional apparel sales."   PSR ¶ 79. Although Trasacco provides the Court with several photographs of what he claims is an apparel business, *see Defendant's Sentencing Memo.* [doc. no. 267] *at 3 and Exhibit 2 to Defendant's Sentencing Memo* [doc. no. 269], the documentation of proceeds from his business appears to be non-existent.   During the PSR interview, the defendant "had difficulty recalling all of his work history."   PSR ¶ 77.   His

financial statement is remarkably replete with handwritten question marks ("?") and ambiguous remarks such as "don't know how to," "guessing," and multiple notations of "approx" related to outstanding balances. The Connecticut Department of Labor has no employment record for the defendant for the last five years, but he reported gross monthly business income. PSR ¶¶ 83, 86. Trasacco's failure to be fully forthcoming to the Court about his business income, especially when he claims that business is a reason to mitigate his sentence, *Defendant's Sentencing Memo.* at 7, supports a sentence above the recommended Guideline range. Although the probation officer requested additional information related to Trasacco's employment situation, PSR ¶ 77, Trasacco has not provided any additional information.

Further, it appears that the defendant did not file any tax returns for either L&H or JIL between 2017-2021. The IRS has no record of him filing a personal return for the tax years 2017, 2018, 2020, and 2021. In 2019, the defendant filed a personal federal return form 1040 that reported no wages and one dollar ($1) in taxable interest income.

Next, the defendant attempts to discredit a portion of DiMassa's testimony that describes the conspiracy in way that inculpates the defendant. But the jury heard the same testimony and convicted the defendant of both crimes and the uncontested facts support DiMassa's testimony. The bank records clearly show all of the money from Trasacco's frauds went to Trasacco. Trasacco created and delivered all the invoices. Trasacco never delivered the vast majority of materials he listed on the

L&H invoices, even after the investigation went overt. Trasacco never did anything to fulfill the JIL invoice until after he learned that federal authorities were actively investigating West Haven's dispersal of COVID funds. By that time, all of the 184K was gone. Such are the hallmarks of fraud.

And the defendant's arguments concerning DiMassa's testimony miss the forest for the trees. The defendant points to three specific incidents described by DiMassa that he claims are untrue. All of these events are not ends in themselves, but describe why DiMassa was afraid of Trasacco and continued the fraud despite not receiving significant amounts of cash. The ultimate conclusion that DiMassa was afraid of Trasacco was clearly articulated by DiMassa.

> Q. Are you scared of John Trasacco?
>
> A. Yes, I am.

DiMassa Trial Testimony at 185.

The defendant next argues that the fact that he kept virtually all of the proceeds of the L&H and JIL frauds is adequately addressed "by the entry of a restitution order in the amount of $411,982 covering all of Mr. Trasacco's gains minus the $20,000 that Mr. DiMassa claims Mr. Trasacco paid to Mr. DiMassa and Mr. Bernardo as kickbacks for the L&H contract."[1] Def's Reply Brief at 9. But this argument ignores the fundamental differences between the schemes in these related cases. In the Compass Investment scheme and Youth Services scheme, all

---

[1] The defendant apparently credits this portion of DiMassa's testimony.

of the co-conspirators stood to gain from the fraud. Lauren DiMassa kept some of the proceeds, eventually depositing an entire check into her account. Bernardo set up a fake payroll plan to hide his proceeds. But the L&H and JIL schemes were designed by Trasacco to benefit only himself. He opportunistically learned of the utter lack of financial controls West Haven had concerning its distribution of COVID funds and that DiMassa could access the money. Trasacco exploited that access for his own benefit and instigated both the L&H and JIL schemes.

Further, the defendant argues that he is "being punished" because he did not receive the adjustment for acceptance of responsibility after being convicted at trial. Def's Reply Memo. at 10. This is just simply incorrect. In the PSR, the probation officer did not recommend an adjustment for acceptance of responsibility because the defendant "has not clearly demonstrated acceptance of responsibility for his offense." PSR ¶ 40. The defendant would still be eligible for this reduction if, prior to sentencing, he demonstrated acceptance of responsibility for both counts of conviction. As of the filing of this memo, he has not done so. This is a choice, not a punishment.

The defendant also argues his criminal category does not underrepresent the seriousness that his criminal past because it is calculated correctly. This argument misses the point. The parties appear to agree that the defendant is in CHC II. While a number of his prior convictions do not count against Trasacco under his criminal history score, pursuant to § 3553(a), the Court must consider the entire history and characteristics of the defendant. Here, the defendant has led a

life largely outside of the law. He has multiple prior convictions. He spent a significant time in prison and then committed this crime. He has no visible means of support, "no current stable income" and apparently supports himself "with gifts from friends and occasional apparel sales." PSR ¶ 79. He has never filed a tax return for that business, a fact that is not accounted for under the calculation of his Guideline range under § 2B1.1 or the calculation of his CHC.

### B. The Defendant Was Not A Minor Participant

Against this backdrop, it is plain that Trasacco was not a minor player in the scheme to defraud the citizens of West Haven through L&H and JIL. The defendant's principal theory appears to be that he is less culpable than Bernardo because without Bernardo, who introduced Trasacco to DiMassa, "Mr. Trasacco would never have had access to public funds at all." Def's Reply Memo. at 5.

This argument has no merit. It is true that Bernardo introduced Trasacco to DiMassa at a cigar bar. And it is true that all three of them frequented Doma. And it is also true that Trasacco did not have direct access to West Haven's payment system. But the reality is that the JIL and L&H frauds would have never occurred but for the fact that Trasacco made them happen. Trasacco was the architect of both the L&H and JIL frauds. He approached DiMassa with the L&H scheme and he continued to give DiMassa unsolicited fraudulent invoices and expected payment. Trasacco exploited DiMassa's access to a poorly controlled municipal financial operation to steal money for himself. This clearly sets his conduct apart from the culpability of both Bernardo and Lauren DiMassa. It is

undisputed that Trasacco retained 95.4% of the proceeds of his fraud, and that Michael DiMassa only received 2.3% of the fraudulent L&H/JIL funds. The small amount of money that DiMassa received was in the form of unexpected cash kickbacks from Trasacco. The differences in the schemes should lead to different outcomes at sentencing.

### III.   Conclusion

After considering the Sentencing Guidelines and the other sentencing factors under 18 U.S.C. § 3553(a), the Court should impose a term of incarceration above the advisory Guideline range and order the defendant to pay $411,982 in restitution.

Respectfully submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

/s

RAY MILLER
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT 20451

DAVID J. SHELDON
FEDERAL BAR NO. CT 07997
ASSISTANT UNITED STATES ATTORNEY

157 CHURCH STREET, 23RD FLOOR
NEW HAVEN, CT 06510
(203) 821-3700

## CERTIFICATE OF SERVICE

This is to certify that on March 29, 2023 a copy of the foregoing Memorandum was filed electronically.   Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s

Ray Miller
Assistant U.S. Attorney